UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-cr-215-TWP-DLP -01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ARIELLE WILKERSON | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cr-00215-TWP-DLP |
| ARIELLE WILKERSON, | ) ) ) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Arielle Wilkerson ("Ms. Wilkerson") has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). (Dkt. 70.) Ms. Wilkerson seeks immediate release from incarceration based on the "extraordinary and compelling" reasons presented by the COVID-19 pandemic. (Dkt. 85.) For the reasons explained below, the Motion is **denied**.

### I. BACKGROUND

On July 10, 2018, Ms. Wilkerson was indicted on eight (8) counts of Bank Fraud, four (4) counts of Aggravated Identity Theft, and one (1) count of Possession of Multiple Unauthorized Access Devices. (Dkt. 1.) In July 2019, she pled guilty to Count 5: Bank Fraud, in violation of 18 U.S.C. § 1344(1) and (2), and Count 11: Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(1). (Dkts. 47, 52.)

In the Plea Agreement, Ms. Wilkerson stipulated to the following facts: beginning in 2012 and continuing until March 16, 2018, Ms. Wilkerson defrauded at least eight financial institutions by falsely representing that she was a customer in order to obtain credit cards and/or other financial instruments. (Dkt. 32 at 11.) Upon her arrest by state authorities, officials found credit cards in

the name of customer victims, mail from banks in the name of customer victims, receipts from purchases using credit cards that Ms. Wilkerson opened using customer victims' information and packages in the name of customer victims.  Ms. Wilkerson admitted that in 2012, she received email files containing the "personal identifiable information"[1] of hundreds of individuals throughout the United States.  Investigators confirmed that Ms. Wilkerson possessed at least 15 means of identification for the individuals she victimized. Ms. Wilkerson ran credit reports on some of these individuals to identify the financial institutions where they had accounts, and she would use their personal information to obtain new or duplicate credit cards and other financial instruments.  *Id.* at 13-14.

In total, approximately 50 individuals were victims of Ms. Wilkerson's criminal scheme. *Id.* at 14.  The parties stipulated that the actual and attempted loss attributable to Ms. Wilkerson's criminal conduct totaled approximately $156,860.38.   *Id.* at 17.   The Court sentenced Ms. Wilkerson to 33 months of imprisonment on Count 5 and 24 months on Count 11, to be served consecutively, for a total of 57 months of imprisonment.  (Dkts. 47, 52.)  The Court also imposed a 4 year term of supervised release on Count 5 and 1 year on Count 11, to be served concurrently. (Dkt. 52 at 3.)  The Bureau of Prisons ("BOP") lists Ms. Wilkerson's anticipated release date (with good-conduct time included) as March 30, 2023.  (Dkt. 85-1.)

Ms. Wilkerson is 27 years old.  She is currently incarcerated at FCI Hazelton in Bruceton Mills, West Virginia.  As of June 3, 2021, the BOP reports that no inmates and 1 staff member at FCI Hazelton have active cases of COVID-19; it also reports that 137 inmates at FCI Hazelton have recovered from COVID-19 and that 1 inmate at FCI Hazelton has died from the virus. https://www.bop.gov/coronavirus/ (last visited June 3, 2021).  The BOP also reports that 1859

---

[1] The plea agreement refers to "PII" but does not appear to define it. According to the presentence investigation report, "PII" stands for "personal identifiable information."  (Dkt. 40 at 5.)

inmates and 381 staff members at FCC Hazelton (of which FCI Hazelton is a part) have been fully inoculated against COVID-19.  *Id.*  That is, more than half of the inmates at FCC Hazelton have been fully inoculated against COVID-19.  *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of June 3, 2021, the BOP reports that FCC Hazelton has a total inmate population of 3275).

On June 16, 2020, Ms. Wilkerson filed a letter which the Court construed as a *pro se* motion for compassionate release.  (Dkt. 70.)  The Court appointed counsel, (Dkt. 79), and appointed counsel filed a brief in support of the Motion, (Dkt. 85).  The Government filed its Response in Opposition asserting that the Motion should be denied because, while Ms. Wilkerson may have presented one "extraordinary and compelling reason" for a sentence reduction, she is a danger to the community and the factors of 18 U.S.C. § 3553(a) weigh against release.  (Dkt. 89.)  After appointed counsel withdrew from the case, (Dkts. 97, 100), Ms. Wilkerson filed a *pro se* reply, (Dkt. 101).  Thus, the motion is now ripe for decision.

## II.  DISCUSSION

Ms. Wilkerson seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. 85.)  Specifically, she contends that her underlying medical conditions (obesity, asthma, allergies, former marijuana smoker, borderline personality disorder and unspecified depressive disorder), which make her more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce her sentence to time served.  (Dkts. 85, 101.)  In response, the Government argues that it is unclear whether Ms. Wilkerson is currently obese, which is the only one of her conditions that the Government concedes qualifies as an extraordinary and compelling reason possibly warranting

compassionate release. (Dkt. 89.) Even if she is obese, the Government argues that Ms. Wilkerson would pose a danger to the community if released and that the § 3553 sentencing factors weigh against granting release. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

---

[2] The Government concedes that Ms. Wilkerson has exhausted her administrative remedies. (Dkt. 78.)

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c) contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a

catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he or she has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction;[3] (2) whether the defendant presents a danger to the safety

---

[3] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Ms. Wilkerson's warden in denying Ms. Wilkerson's administrative request for relief. Ms. Wilkerson's warden appears not to have considered the possibility that Ms. Wilkerson could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. (*See* Dkt. 77-1.) Thus, the warden's decision provides little guidance to the Court's analysis.

of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Ms. Wilkerson asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case because she has various conditions (including obesity, asthma, allergies, former marijuana smoker, borderline personality disorder and unspecified depressive disorder) that increase her risk of experiencing severe COVID-19 symptoms. (Dkts. 85, 101.) The Centers for Disease Control and Prevention ("CDC") has recognized that having moderate-to-severe asthma[4] and being obese can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021). The Court will therefore assume without deciding that Ms. Wilkerson's risk of developing severe symptoms if she contracts COVID-19 creates an extraordinary and compelling reason that could warrant a sentence reduction.[5]

This does not end the analysis, however, because the Court finds that the applicable § 3553(a) sentencing factors weigh against granting Ms. Wilkerson's request for compassionate release and that she would pose a danger to the community if released. The factors to consider pursuant to § 3553 are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness

---

[4] There is a dispute between the parties as to whether Ms. Wilkerson's asthma would qualify as moderate-to-severe. (Dkt 89 at 8; Dkt. 101 at 5-6.) The Court need not resolve this factual dispute because even if the Court were to assume that Ms. Wilkerson suffers from moderate-to-severe asthma, she is not entitled to compassionate release for the reasons discussed below.

[5] Ms. Wilkerson also highlights several issues related to the conditions of confinement at FCI Hazelton. (Dkts. 85, 101.) While such allegations might conceivably support a civil action in her district of incarceration, they do not, however, constitute an extraordinary and compelling reason that warrants releasing her from incarceration more than 1 ½ years early.

of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Ms. Wilkerson's Motion.

Here, Ms. Wilkerson suffers from at least two medical conditions that increase her risk of experiencing severe symptoms if she contracts COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021) (identifying moderate-to-severe asthma and obesity as conditions that can make one more likely to get severely ill from COVID-19). Nonetheless, the Court notes that at 27 years of age, Ms. Wilkerson is statistically unlikely to die from COVID-19. *See* https://covid.cdc.gov/covid-data-tracker/#demographics (finding that individuals between the ages of 18-29 account for only .5% of the total deaths from COVID-19). And while FCI Hazelton experienced a significant outbreak of COVID-19, the BOP's efforts to control the virus among the inmate population appear to be having some success. https://www.bop.gov/coronavirus/ (last visited June 3, 2021) (showing that no inmates at FCI Hazelton have a current COVID-19 infection). As of June 3, 2021, 1,859 inmates at FCC Hazelton—more than half of the inmate population at the complex—have been fully inoculated against COVID-19. *Id.* That said, the

9

nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves from the virus. In short, the Court is aware of the risk that Ms. Wilkerson faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

Also weighing in Ms. Wilkerson's favor under the Court's § 3553(a) analysis, her crimes were non-violent in nature. She is also employed as a unit orderly and has taken several courses while in BOP custody. If released, Ms. Wilkerson plans to live with her brother and his wife who can provide her with a stable environment and the guidance that she needs. The BOP rates Ms. Wilkerson as a low risk for recidivism and has given her a minimum security classification. (Dkt. 101-7.)

Weighing against her, Ms. Wilkerson is a recidivist fraudster who was described by this Court at sentencing as "a consumer's worst nightmare." Although her crimes were non-violent, Ms. Wilkerson carried out a sophisticated fraud scheme that required extensive planning and a long-term commitment to criminal behavior. The parties stipulated that actual and attempted loss attributable to Ms. Wilkerson's criminal conduct totaled approximately $156,860.38. She obtained the personal information of hundreds of individuals and went to great lengths to gather more information on at least 50 of them to further her scheme. The factual basis for her guilty plea describes in detail how she obtained the information on individuals from the internet, used that information to have duplicate cards sent to her from the financial institutions and then used the cards to purchase gift cards, flights, hotel reservations, beauty products, food and other personal items. (Dkt. 32 at 12-17.) Ms. Wilkerson has prior felony convictions for fraud on a financial institution in 2015; theft in 2015, and corrupt business influence in 2016. (Dkt. 40.) With each of those convictions, Ms. Wilkerson violated her supervised release/probation at least once and was taken back into custody each time. While Ms. Wilkerson has only had one disciplinary infraction

during her current incarceration, she incurred that infraction in February 2021 when the disciplinary committee concluded that Ms. Wilkerson had provided inaccurate information to her attorney and falsified medical records to submit to this Court in support of her compassionate release motion.[6] (Dkt. 101-9.) Ms. Wilkerson was also expelled from the residential drug abuse program in October 2020. (Dkt. 101-7.) Finally, Ms. Wilkerson has completed only 60% of her sentence and is not scheduled to be released for more than 1 ½ years.

In light of these considerations, the Court finds that releasing Ms. Wilkerson early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes. Similarly, and as the Magistrate Judge found in 2018 when she ordered Ms. Wilkerson detained pending trial, (*see* Dkt. 29), this Court finds that if released, Ms. Wilkerson would pose a danger to the community.[7] The Court is sympathetic to the risks Ms. Wilkerson faces from COVID-19 but does not find that those risks warrant releasing her from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion

---

[6] Pursuant to the Court's February 9, 2021 Order, Ms. Wilkerson was required to respond to the allegations that she provided her attorney with false information and altered a medical record that was subsequently transmitted to her attorney for use in this case. (*See* Dkt. 100.) Ms. Wilkerson was also required to show cause why the Court should not sanction her for attempting to perpetrate a fraud on the Court. *Id.* It appears that Ms. Wilkerson attempted to comply with the Court's Order, however, several pages of her response are missing and/or incomplete. (*See* Dkt. 101-9.) Nevertheless, the Court declines to sanction Ms. Wilkerson at this time. **She is advised, however, that if in the future she files altered documents or submits documents for a fraudulent purpose with the intent to mislead the Court, she will be sanctioned.** Potential sanctions include, but are not limited to, a ban on filing any motions for compassionate release for two years.

[7] Pursuant to § 3142(g), the factors to be considered regarding potential danger to the community are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including--(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III. CONCLUSION

For the reasons stated above, Ms. Wilkerson's *pro se* Motion for compassionate release, (Dkt. [70]), is **DENIED**.

**SO ORDERED.**

Date: 6/11/2021

DISTRIBUTION:

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Arielle Wilkerson #16505-028
SFF Hazelton
P.O. Box 3000
Bruceton Mills, West Virginia 26525

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE
maryann.mindrum@usdoj.gov